No. 6299.

J. M. BRACKENRIDGE v. THE STATE.

| 27 | 513 |
| 29 | 71 |

1. EXTORTION—TERM DEFINED—INDICTMENT.—In legal parlance, and as used in article 240 of the Penal Code, defining extortion, the word "demand" means "a requisition or request to do a particular thing specified under a claim of right on the part of the person requesting." One of the duties of a county judge is to present to the county commissioners his certified account for the fees allowed him by law in criminal cases, and the presentation of such an account by a county judge to the county commissioners, with the request that they approve the said account as a claim against the county, constitutes a "demand" within the meaning of the law. Among the fees which the county judge is entitled to demand and receive from the county is the sum of three dollars for each criminal action "*tried* and finally disposed of" before him. A criminal action *dismissed* is not a criminal action "*tried* and finally disposed of,*" and if the certified account presented by a county judge to the county commissioners includes a fee for a criminal action merely dismissed, the presentation of such an account amounts to a "demand" for fees not allowed by law. See the opinion *in extenso* for indictment *held* sufficient to charge the offense of extortion as defined by article 240 of the Penal Code.

2. SAME.—EVIDENCE.—Over the objections of the defendant, the State was permitted to introduce in evidence a prior indictment against the defendant for demanding, as county judge, fees not allowed by law. *Held*, that the evidence was properly admitted as tending to show a knowledge on the part of the defendant that the fees demanded by him were not lawful,—to which purpose the said evidence was expressly limited by the charge.

3. SAME.—REMOVAL FROM OFFICE FOR OFFICIAL MISCONDUCT.—Article 3388 of the Revised Statutes provides that "all convictions by a petit jury of any county officers for any felony, or for any misdemeanor involving official misconduct, shall work an immediate removal from office of the officer so convicted, and such judgment of conviction shall in every instance embody within it an order removing such officer." Demanding fees not allowed by law is "official misconduct" within the purview of the statutes of the State

4. SAME.—Article 3415 of the Revised Statutes provides that "no officer shall be prosecuted or removed from office for any act he may have committed prior to his election to office." The proof shows that the defendant was elected and qualified as county judge of Travis county in 1886. That he was re-elected on the sixth day of November, 1888; that the offense was committed on the fifteenth day of November, 1888, and that he did not qualify under his re-election until the twenty-first

33

day of November, 1888. It is contended that, under this proof, the defendant is protected from removal by the said section 3415, because he had not *qualified* as his own successor as county judge at the time of the alleged offense. But *held* that the position is not maintainable; the defendant, at the time of the offense, was county judge *de facto* and *de jure*, and by virtue of his election and qualification in 1886 was exercising the functions of his office, and had the legal right to exercise them until his successor should qualify; wherefore his official acts on the fifteenth day of November, 1888, came within the purview of article 3388 of the Revised Statutes, and not of article 3415. See the opinion in extenso on the question.

6. PRACTICE.—DISQUALIFICATION OF A JUROR.—NEW TRIAL.—The defendant's motion for new trial sets up that, though on his *voir dire* the juror Doss declared his competency to sit as a juror, he was, in fact, as ascertained by the defendant after the trial, an incompetent juror, being neither a resident of Travis county, a house holder in said county, nor a freeholder in the State, and that before the trial he declared his prejudice against the defendant. The district attorney filed a written denial of the allegations made in the motion for new trial, but introduced no evidence in support of said denial. In this state of the case, the juror Doss must be held to have been incompetent, and his service upon the jury entitled the defendant to a new trial.

APPEAL from the District Court of Travis. Tried below below before the Hon. W. M. Key.

The conviction in this case was had under an indictment which charged the appellant, as county judge, with official extortion in demanding fees not allowed by law. The jury assessed as penalty against the defendant a fine of twenty-five dollars, and, upon the verdict, the trial judge adjudged his removal from office, and declared the office of county judge vacant.

The State introduced in evidence the account upon which the indictment was based as follows:

"Statement of total cases deposed of by Hon. J. M. Brackenridge from last statement, October 6, 1888, to date, November 15, 1888:

Criminal cases:

| | | | | | |
|---|---|---|---|---|---|
| 3463 | 3051 | 3325 | 3334 | 3336 | 5 |
| 3342 | 3354 | 3356 | 3359 | 3360 | 5 |
| 3361 | 3362 | 3372 | 3377 | 3383 | 5 |
| 3524 | 3500 | 3949 | 3507 | 3506 | 5 |
| 3525½ | 3605 | 3606 | 3609 | 3610 | 5 |

Statement of the case.

| | | | | | |
|------|------|------|------|------|---|
| 3611 | 3612 | 3613 | *3502* | *3521* . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 3617 | 3729 | 3526 | 3529 | 3530 . . . . . . . . . . . . . . . . . . . . | 5 |
| 3531 | 3532 | 3533 | 3544 | 3545 . . . . . . . . . . . . . . . . . . . . | 5 |
| 3547 | 3548 | 3549 | 3551 | 3564 . . . . . . . . . . . . . . . . . . . | 5 |
| 3565 | 3566 | 3567 | 3568 | 3569 . . . . . . . . . . . . . . . . . . . . | 5 |
| 3570 | 3571 | 3572 | 3591 | 3595 . . . . . . . . . . . . . . . . . . . | 5 |
| 3603 | 3619 | 3496 | 3504 | 3543 . . . . . . . . . . . . . . . . . . . . | 5 |
| 3618 | . . . . | . . . . | . . . . | . . . . . . . . . . . . . . . . . . . . . . . . | 1 |

Lunacy cases:

| | | | | | |
|------|------|--------|------|------|---|
| 1366 | 1367 | 1368 | 1369 | 1370 . . . . . . . . . . . . . . . . . . . . | 5 |
| 1371 | 1373 | *1374* | . . . . | . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |

*69*

Less 7 cases. . . . . . . . . . .62 cases . . . . . . . . . . . . . . . . . . . . . . . .   7

6⁰

I hereby certify that the above account is just and due for cases tried and disposed of in the Co. court of Travis Co., Sate of Texas. To J. M. Brackenridge, Co. Judge, at $3.\frac{00}{100}$ per case.                                                                       189.00

*207.00*

"J. M. BRACKENRIDGE,

"Co. Judge."

Endorsed "Reg. No. 19,695, Dec. 10, 1888.

| Approved— | | Co. | Com'r. | Prec. | No. | |
|-----------|---|-----|--------|-------|-----|---|
| *William  Wellmer,* | | Co. | Com'r. | Prec. | No. | *1.* |
| A. G. Kemp, | | " | " | " | " | 2 |
| S. C. Granberry | | " | " | " | " | 3 |
| *J. W. Cloud,* | | " | " | " | " | *4* |
| J. W. Cloud, C. C. P. No. 4. | | | | | | |
| William Wellmer, C. C.   1." | | | | | | |

The said account is endorsed across the face:   "J. M. Brackenridge."

Ed Anderson testified, for the State, that he was the county treasurer of Travis county, and as such was the custodian of the account exhibited in evidence, which was placed in his hands by A. R. Morris, tax collector of Travis county.

[NOTE.—The words and figures in italics denote words and figures which were cross-lined out in the account as approved and put in evidence.— REP.]

On his cross examination, this witness stated that he held the account, which bore the approval of the county commissioners, as a liquidated claim against the county, and presumed that the same was paid by Collector Morris. The witness could not designate the law under which he became the custodian of the account. He did not pay the said account on a warrant issued by the county clerk. He thought the endorsement of the commissioners court was authority sufficient for the payment of the claim, and did not know that he had no authority to pay it except upon warrant drawn by the county clerk.

J. W. Cloud testified, for the State, that he was county commissioner of precinct number four of Travis county, and held that office in November, 1888. He identified the account in evidence as the account which the defendant presented to the commissioners court for approval at its regular meeting in November, 1888. Defendant was then county judge of Travis county. Defendant wrote the certificate to the said account in the presence of the said court, remarking that he "would write the certificate to this account, and give the court a good one; that Jeff Brown wrote the certificate on the previous accounts, but he would write this one." The said account at that time contained no erasures. The commissioners court at that time had a stamp with the names of the commissioners on it which was used in approving claims against the county. That stamp of approval was placed upon this account without the knowledge or consent of the witness. Witness did not know who impressed it upon the said account. The witness soon ascertained that the said account was stamped "approved," and that it included fees for several cases that had not been tried. Witness and Commissioner Wellmer then procured the account from Captain A. J. Jernigan, then county treasurer, and withdrew or erased their names or stamped signatures therefrom. Defendant became indignant and angry with witness and Wellmer for doing so, and said that he would "make it warm for somebody." He became angry with witness and Wellmer because they would not approve his claim; charged that witness and Wellmer had "gone back" on him, and would not allow him his fees, although he needed money. The witness told defendant that if he would present his account, omitting the dismissed cases, it would be approved. Jeff Brown afterward presented the account, in its present shape, with the dismissed cases erased, and it was approved. The witness, on the day

prior to this trial, heard the defendant tell James H. Robertson that he instructed Jeff Brown to make out his account and to include the dismissed cases.

On his cross examination, the witness said that he did not critically examine the account nor compare it with the docket, when it was first presented by the defendant. The defendant at all times of which witness had any knowledge openly asserted his right to fees in cases dismissed, and contended, when complaining of witness and Wellmer, that he was as much entitled to fees in those as in any other State cases. The witness did not know when nor by whom the erasures in the body of the account, nor the interlineations, in the certificate, were made. They were in the account when finally approved.

Frank Brown testified, for the State, that he was the clerk of the county court of Travis county. The defendant was county judge of Travis county in November, 1888. He was first elected and qualified in 1886. He was re-elected at the general election on November 6, 1888, and qualified under his re election on November 21, 1888. The minutes of the county court being produced, the witness's attention was directed to criminal cases Nos. 3383, The State v. Roy, gaming; 3499, The State v. Smith, aggravated assault; 3500, The State v. Brown, aggravated assault; 3502, The State v. Silver, misdemeanor theft; 3507, ex parte Williams, application for writ of habeas corpus, and 3521, The State v. Kitchens, aggravated assault, all of which cases, he testified, were shown by the minutes to have been "dismissed" without trial. Witness was not personally present when the said cases were dismissed, and could not say upon what ground they were severally dismissed. The minutes disclose no more than that they were dismissed.

The State next introduced in evidence the file papers in each of said cases, comprising the indictments, capiases with returns showing arrests, appearance bonds, subpœnas, etc. It next introduced in evidence an indictment against the deendant filed previous to the filing of the indictment in this case, charging him with a similar offense.

District Clerk James P. Hart testified, for the State, that the file number of the indictment introduced in evidence was 8484. Defendant entered into recognizance on that cause on October 19, 1888. Witness did not think that the defendant ever read the indictment in that cause. Major Walton and Mr. Wheless, who were employed by defendant as counsel,

saw and read the said indictment, and Mr. Wheless made a copy of the account embraced in it.

The State closed its case by introducing in evidence the defendant's application for a postponement in cause No. 8484, when it was called for trial on October 30, 1888. Stated in brief, that application shows that the defendant expected to prove by the absent witness, H. B. Barnhart, then county attorney of Travis county, that "defendant advised with him as the county attorney and legal adviser of the county of Travis, in reference to his right to demand and receive a fee of three dollars in each and every criminal action dismissed by the defendant from the criminal docket of the county court of Travis county, and requested said Barnhart to investigate the matter thoroughly and advise him as to his right to collect the same; that Barnhart did examine the said question, and did advise defendant that he should, and lawfully could, demand and receive three dollars in each and every criminal action dismissed by him from the criminal docket;" that defendant "applied to the Hon. J. S. Hogg, Attorney General of the State of Texas, now temporarily absent from Travis county, for his opinion as to whether the county judge was entitled to charge fees in dismissed cases that were finally nolle prosequied; that the said Attorney General did not give his opinion, but said that he thought there was some data in his office upon that identical question, in the shape of a letter or written opinion; that search failed to discover the said letter or opinion in the said Attorney General's office, and the said Attorney General declined to give a decisive opinion on the question.

H. B. Barnhart testified, for the defense, that he was county attorney of Travis county in October, 1888. Prior to that month the defendant came to witness and asked him if he was entitled to charge fees for cases dismissed by him from the criminal docket. The witness replied that he was unable to say at that time, and promised to examine into the question and advise him. Defendant asked him about the matter two or three times afterward, and witness each time told him that he had not investigated the matter. On the last occasion defendant remarked that the statute allowed him three dollars for each case finally disposed of, and asked witness if a case "dismissed" was a case "finally disposed of," and witness replied: "Yes, in my judgment it is, and in such case you are entitled to charge your statutory fee."

Ex-County Treasurer A. J. Jernigan, ex-County Attorney E. T. Moore, ex-County Attorney H. B. Barnhart, District Clerk Hart, County Clerk Brown, County Tax Collector Morris, County Treasurer Anderson, County Commissioner Cloud and Deputy Sheriff Johnson, each testified, for the defense, that they had known the defendant for several years, and that his reputation for honesty in the community of his residence was good.

F. G. Morris, attorney at law, testified, for the defense, that he had known the defendant a number of years, and that, leaving out of consideration this and other similar indictments recently preferred against him, the reputation of the defendant for honesty and integrity was good.

A. M. Jackson, Jr., attorney at law, testified, for the defense, that, except as to the matters involved in this and another indictment for a similar offense, he had never heard the defendant's character for honesty and integrity discussed.

The defense closed.

Attorney General Hogg testified, for the State, that he had met the defendant a few times and knew him, but had no recollection of the defendant ever applying to him for advice as to his right to collect fees for criminal cases dismissed by him as county judge, but the defendant may have done so. Witness never gave opinions except in writing, when he could avoid it.

On cross examination, the Attorney General testified that the subject matter of judges charging fees for dismissed cases had been discussed in his office, but he had no recollection of ever having given an opinion on the matter.

*Walton, Hill & Walton, T. H. Wheless* and *A. T. Patrick,* for the appellant. Defendant excepted to the indictment for insufficiency.

1. It charges no criminal offense against the laws of Texas.

2. The facts alleged do not show a demand for fees not allowed by law.

3. It only charges an application by defendant as a man for the approval of the account indicted.

4. It fails to charge that the act indicted was done by defendant in his official capacity.

5. It charges in whole and in part acts outside the performance of official duty.

Was there a demand for fees in the facts stated in the indict-
ment? The act was a demand for the approval of an account
which contained items of fees.   Was that an unlawful demand
for fees not allowed by law?   The Statute provides (art. 1075,
Code Crim. Proc.) that the county judge shall be allowed a fee
of three dollars for every criminal case finally tried and dis-
posed of by him.    Article 1076, Id., provides that the judge
shall make out his account for fees, certify to its correctness
and file it with the clerk of the court.   Then the commissoners
court shall approve such account for such amount as they may
find correct, when they shall order a draft to be issued upon the
county treasurer in favor of the judge for the amount of the
account so approved.

The action of the appellant was, under the statute, nothing
more than to invoke the judicial power of the commissioners
court to investigate the fact as to whether the account certified
by him was correct, and to make a judicial finding as to the
amount that was correct.   The certificate of the judge as to
the correctness of the account could, under no circumstances,
authenticate it for payment; it only prepared the account for
the investigation the court was to make—until certified, the
court could not investigate.   It was as necessary for him to cer-
tify the account, to move the court to investigate its correct-
ness, as it was that an indictment should have been returned
before the trial of this case or that a pleading should be drawn
and filed before any relief could be granted in a court of record.
It was a necessary preliminary to the making of a demand for
fees.   He could never obtain the money on said account, no
matter whether approved or not.   No custodian of public money
would or could legally pay the account.   The account had to
be approved by the court, and a draft for the money ordered
and the draft drawn, before payment could be made or legally
demanded.   How, then, could a demand ıor fees be made by
the presentation of an account for approval that is not recog-
nized by law as a paper that can be paid?   He was a suitor be-
fore the court for relief, viz.: to have this account corrected—for
its approval as corrected—to be made the basis of a draft,
which he might present to the treasurer, and on it demand his
fees.   Until these proceedings were had he could make no de
mand for fees, if fees mean money.   Article 998, Revised Stat
utes, provides that the county treasurer shall not pay any money
out of the county treasury except in pursuance of a certificate

or warrant from some officer authorized by law to issue the same. . The certificate mentioned in the law does not include certificate of the county judge touching his fees, for the simple and sufficient reason that the law makes special and particular provision in regard to that matter.

Demand means "the asking or seeking for what is due, or claimed as due; a thing or amount claimed to be due." (Webster's Un. Dict., sub. 5 of last title of "Demand.") The same meaning is given substantially in the law dictionaries. We find no adjudicated case to cite on this point, but we hardly deem it necessary, the principle governing the question vindicating itself. Suppose on the non-payment of fees, when demanded, the account therefor would bear interest, could it be said that the presentation of an account for adjustment or adjudication as to correctness—would a refusal of the court to approve it put the interest clause in motion? And so, if demand for fees were necessary before suit against the county could be legally brought, would the refusal to approve by the court authorize suit? We certainly do not think so. In such cases there would be two chapters in the transaction. First, the court would by mandamus be compelled to approve the account, order warrant, warrant issue; and second, then demand be made for payment of the fees by the treasurer. If he refused to pay, then in the one case interest would run, and in the other suit could be brought; but no interest would run and no suit could be maintained on the mere refusal of the court to approve the account; and so we confidently claim that no such demand as contemplated by the statute was made in this case as will uphold the indictment or conviction.

The indictment charges extortion merely—does not charge official misconduct, except inferentially—and fails to charge the act was done officially. It says he was an officer, and did so and so, but not that he did so and so as an officer. He might have been a murderer and an officer, or any other character of an offender and an officer at the same time; but to be guilty of official misconduct the offense must be done officially, and the indictment must so charge. (Smith v. Ling, 9 Pacific Rep., 171.)

2. If, however, the court should consider the indictment sufficient, then, can the conviction stand for official misconduct, and consequent removal from office.

The statute is that any conviction involving official misconduct shall work an immediate removal from office of the officer

so convicted. (Rev. Stats., art. 3388.) Article 3393, Id., defines official misconduct thus: "Any unlawful behavior in relation to the duties of his office, wilful in its character, of any officer intrusted in any manner with the administration of justice or the execution of the laws; * * * any wilful or corrupt failure, refusal or neglect of an officer to perform any duty enjoined on him by law." Other than as above there is no official misconduct known to the laws of Texas. Does the act charged come within the definition? The act must be unlawful behavior in relation to the duties of his office, or failure, neglect or refusal to perform some duty enjoined on him by law. The act must be official in character and performed as an officer in the exercise of the duties of his office. Nothing short of that will bring him under the denunciation of the law. This act must be extortion in office. The office—the powers of the office must have been put in motion—must have been demanded under the color of his office, as was expressly said in Collier v. The State, 55 Alabama, 125; Cleveland v. The State, 34 Id., 259; 18 Massachusetts, Dunlap v. Curtis, 210.

The motive and intent must be corrupt. No claim of right. must exist. Vide American Criminal Law (Desty), section 84a, with authorities cited; also Cutter v. The State, 36 New Jersey, 125. It was shown by the testimony that appellant openly claimed the right to charge and collect these fees. He repeatedly asked the county attorney to investigate the matter. He went to the Attorney General with the question, but did not see him. (Vide the affidavit of appellant for a postponement of the case, put in evidence by the State.)

In this case there was a claim of right. Wilfulness is absent. Corrupt motive and intent wanting. The act was not done in the exercise of the duties of his office. The power of the office was not brought to bear.

It may, and probably will, be said that the making of the certificate was an official act. Admit it, but the indictment is not for that; it is for demanding fees not allowed by law. The making of the certificate was not a demand for fees; whatever else may be called a demand, that is not.

The law does not contemplate that the judge shall present the account for approval, officially or otherwise. (Vide art. 1076, Crim. Proc.) It provides he shall certify it and file it with the clerk. After that, the court shall act. If to present the account for approval is the exercise of the duties of his office, or

a duty enjoined on him by law, then to fail to discharge that duty or to exercise it, would be malfeasance, and he would be subject to indictment and removal from office. To state such a proposition is to refute it. To reason over this case, so bare is it of merit, that it is like trying to explain why two and two make four.

Nevertheless, the conviction was construed by the court to include official misconduct; in fact, that the act charged was official misconduct, and the judgment was so entered, and that the judge be removed from office.

3. If wrong in the foregoing, then is the verdict sufficient to authorize the judgment? Article 73 of the Penal Code provides that "whenever an offense is committed by an officer, and the same appears to the jury to be a willful violation of duty, they shall so find, and such officer shall be removed from office."

It is not enough that the jury shall find a verdict simply of guilty, but it shall be an express and direct finding that the act charged was a willful violation of duty. It would not only be proper, but we think necessary, that the court should instruct the jury to so find under given facts. The jury should know and realize the full force and effect of the verdict they return. While the indictment charges that the act was wilful and the jury finds "guilty," yet that is far short of a finding in express words that the act was a wilful violation of duty. The court can hardly fail to see the vitality and importance of the distinction made. The defendant should be heard on every phase of the case, and the jury be advised by him on every form of verdict they can return. The act here charged was extortion, pure and simple, and no charge of violation of official duty. It can not be said that the finding on the charges is tantamount to a finding in the language of the article cited.

4. The fourth question is an interesting one, and is this:

Can an officer, who is his own successor, be removed from his new term for acts done between the date of his re-election and his qualification for the new term?

In this case appellant was re-elected, on the sixth of November, his own successor. The indictment charges the act to have been done on the eighth of November. The facts show that it was done on the fifteenth of November, and the evidence is that he qualified for his new term on the twenty-first of November. On the fifteenth of November was he the old judge

or the new? He was tried after his qualification for the succession and removed from office—that is, he was removed from the new office.

Article 3415, Revised Statutes, provides that no officer shall be removed from office for acts done prior to his election to office. In Gordon v. The State, 43 Texas, 330, it was decided that, to authorize the removal of an officer, the charge must specify some act or omission since his election showing his unfitness for the office. In Trigg v. The State, 49 Texas, 645, the court say: "The petition embraces a period between the election and his induction in office, which doubtless the court would have had corrected if attention had been called to it by special exception;" which, interpreted by the Reporter, means: "Acts of drunkenness, between the election and qualification of an officer, should not have been allowed in the pleading or in evidence." We doubt not that the interpretation is correct, or else the language of the court is meaningless nonsense. In Ling v. The State, before cited, it is said that after a person ceases to be a public officer he can not be prosecuted for official misconduct. And to the same effect is Stubbs v. The State, 53 Mississippi, 437. In Flatan v. The State, 56 Texas, 101, Mr. Justice Stayton said, referring to section 24, article 5, Constitution, on the subject of removals from office by the district judges: "The whole context of the section of the Constitution bears unmistakeable evidence that the words 'may be removed,' as herein used, refer only to persons who are officers in the full sense of the word—to persons who, having been elected or appointed to an office, have qualified as provided by law, and have been inducted into office—whose removal is sought for some cause arising after such person has been so inducted. Only to such cases do we understand the section of the Constitution to refer." (See also note 140 to Sayles' Constitution of 1876, page 549.) The statute law under which the removal from office in this case was made, is original in the Revised Statutes, and was enacted under the section of the Constitution cited above, and discussed by Justice Stayton—though the Reporter erroneously calls it article 6; and Mr. Sayles also falls into error, calling it section 8 of article 5. (See article 3388 of his Statutes.) Both principle and authority seem to be clear that the removal of an officer can be made only for offenses committed by him after his qualification for the term from which he is removed.

5.   The wrongful admission of hurtful evidence, when excepted to at the time, will work a reversal of a conviction, although the injury may not be perceptible.   On the trial of this case the State offered in evidence an indictment found at a prior day of the term for a like offense, to the introduction of which defendant objected on the grounds:   Irrelevant, incompetent and inadmissible, calculated to prejudice him before the jury, because he has never been tried on said indictment, and is presumed to be innocent of the charges therein contained; and, further, because the fact of indictment found and pending is no evidence of defendant's knowledge of the illegality of the demand for fees; and they being overruled, the paper was let in, to which ruling a bill was saved.

The court, in its charge, limited the use for which the jury could consider it, viz: on the question of knowledge, etc.

The question at once presents itself whether the evidence was admissible for any purpose, and in answer to that question we say:

1.   This is not a case in which collateral acts can be introduced for consideration.

2.   In no case can an indictment be offered and considered as a collateral act, from which *scienter* may be inferred against a defendant.

3.   There was no evidence to show that defendant was guilty of the acts charged against him in said indictment.

4.   Before the collateral fact can be put in against a defendant the offense must be proven, and that defendant is the guilty party.

5.   Every man is presumed to be innocent until proven to be guilty.

6.   The presentation of an indictment affords not even a presumption of guilt.

7.   The account made part of the indictment contains three classes of cases, two of which are those indicted:—

1.   Cases which were finally tried and disposed of.

2.   Cases dismissed by the county attorney, and which were not tried but finally disposed of.

3.   Cases that were retired, neither tried nor finally disposed of.

The case on trial was for demanding fees not allowed by law, and were charged to be the second class above.

The indictment being admitted without restriction as to the

class of cases to consider, left the jury at liberty to draw *scienter* from the third as well as second class above, a class wholly distinct and foreign from the class of cases for which defendant had been indicted and was on trial.

In any view that we can take of the point under discussion, we find nought but hurtful and pernicious error.

*W. L. Davidson*, Assistant Attorney General, filed an able and interesting argument and brief for the State.

WILLSON, JUDGE.   This conviction is under article 240 of the Penal Code, which reads: "If any officer authorized by law to demand or receive fees of office, or any person employed by such officer, shall wilfully demand or receive higher fees than are allowed by law, or shall wilfully demand or receive fees not allowed by law, he shall be punished by fine not less than twenty-five nor more than one hundred dollars for each offense."

The charging part of the indictment is as follows: "That J. M. Brackenridge, in said county and State, on or about the eighth day of November in the year of our Lord, eighteen hundred and eighty-eight, was then and there the duly qualified and acting county judge of said Travis county, Texas, and as such officer was authorized by law to demand and receive fees of said office, and he did then and there as such officer unlawfully, extorsively and wilfully demand from said Travis county fees not allowed by law; that is, he did then and there as such officer unlawfully and wilfully make out an account in writing against said Travis county, and certify that the same was correct, and present the same to the commissioners court, of said Travis county, at a term of said commissioners court, and did then and there wilfully and unlawfully demand that said commissioners court approve said account against said Travis county for the full amount thereof, and order a draft to be issued upon the county treasurer of said Travis county in his, said Brackenridge's, favor for the full amount of said account, when there was embraced in and a part of said account the sum of eighteen dollars which was made up out of a fee of three dollars charged in said account in each of six criminal cases charged for in said account as criminal cases tried and finally disposed of before him, said Brackenridge, as county judge as aforesaid, in the county court of Travis county, Texas, and the said fee of three dollars in each of said six cases, aggre-

gating eighteen dollars, was not allowed by law, because said cases were not in fact tried and finally disposed of before said Brackenridge as county judge as aforesaid, but were criminal cases which were dismissed in said county court without any trial whatever; that the said cases which said fees were charged for and demanded were the following named, numbered and styled cases in the county court of said Travis county, to wit: No. 3383, The State of Texas v. Abe Roy; No. 3499, The State of Texas v. Jim Smith; No. 3500, The State of Texas v. Joe Brown; No. 3502, The State of Texas v. B. D. Silver; No. 3507, The State of Texas v. Thomas Williams; No. 3521, The State of Texas v. W. A. Kitchens; against the peace and dignity of the State."

Exceptions to the indictment were presented and urged by the defendant, and were overruled by the court; and this ruling of the court is insisted upon as error. The exceptions are as follows: "1. The indictment charges no criminal offense against the laws of the State of Texas. 2. The facts alleged in the indictment do not show a demand for fees not allowed by law. 3. The indictment only charges an application by defendant as a man for the approval of the account indicated. 4. The indictment fails to charge that the act indicted was done and performed in his (defendant's) official capacity. 5. The indictment in whole and in part charges acts outside the performance of official duty."

We will consider the three last exceptions first and together. As we read and understand the indictment, it plainly charges that the defendant, as county judge of Travis county, in his official capacity, and not merely as an individual, demanded fees not allowed by law. Nor does it charge an act outside the performance of official duty, for the law makes it the duty of a county judge to present his certified account to the commissioners court for the fees allowed him by law in criminal cases. (Code Criminal Procedure, article 1076.) In presenting the account in question he was performing an official act, an act which the law required him to perform in the discharge of his official duty as county judge. We hold, therefore, that the third, fourth and fifth exceptions to the indictment are not maintainable.

The second exception presents the question, was the presentation of the account by the defendant, to the commissioners court, a *demand* for the fees therein charged, within the mean-

ing of the word "demand" as used in article 240 of the Penal Code? We must answer this question in the affirmative. The legal signification of the word "demand," as used in practice, is, "a requisition or request to do a particular thing specified under a claim of right on the part of the person requesting." (Bouvier's Law Dictionary, "Demand.") In this instance, the defendant requested the commissioners court to approve his account or claim against the county, claiming all the items therein charged as correct and legal, and in so doing he *demanded*, in the manner prescribed by law in such cases, the fees which he claimed to be due him by the county. There was no other mode in which he could legally demand said fees. (Code Criminal Procedure, article 1076.) Said exception also presents the further question, were the items of fees specified in the indictment, fees not allowed by law? We must answer this question in the affirmative. A county judge is entitled to demand and receive from the county the sum of three dollars for each criminal action *tried and finally disposed of before him*. (Code Criminal Procedure, article 1075.) He is not entitled to said fee in a case which is merely *dismissed*. A *dismissal* of a case is not a *trial* of it, within the meaning of the law. A dismissal of a case is to send it out of court without a trial upon any of the issues involved in it. It is a final disposition of that particular case, but not a trial of it. A final disposition of a case does not of itself entitle the county judge to the fee allowed by article 1075, supra. To entitle him to the fee the case must have been *tried* and finally disposed of *before him*. He must both try and finally dispose of it. Such is the plain language of the statute. A trial is an examination before a competent tribunal, according to the laws of the land, of the facts put in issue in a cause, for the purpose of determining such issue. (Bouvier's Law Dictionary, "Trial.")

We are of the opinion that the indictment charges an offense against the laws of the State; that it charges fully and sufficiently the offense of demanding fees not allowed by law, denounced by article 240 of the Penal Code; and that the exceptions to the indictment were rightly overruled.

For the purpose of tending to show a knowledge on the part of defendant that the fees demanded by him were not lawful, the indictment put in evidence by the State over defendant's objection was, we think, admissible testimony. It was offered for no other purpose, and the court fully instructed the jury in

its charge that it must not be considered for any other purpose. There is a bill of exception in the record calling in question the correctness of the ruling of the court in admitting in evidence the account for fees which was presented to the commissioners court.    There is also in the record a bill of exceptions to the charge of the court.    Counsel for defendant have not in their brief presented the questions raised by said bills, but we have nevertheless considered the same, and find no error in the ruling or charge.    We think the charge of the court present, the law of the case succinctly, clearly and correctly.

By the verdict of the jury the defendant was found guilty as charged in the indictment, and his punishment assessed at a fine of twenty-five dollars.    Judgment was accordingly entered upon said verdict in the usual form, and upon the written suggestion of the district attorney the court rendered and embodied in the judgment entry an order as follows: "And it appearing to the court that the defendant, J. M. Brackenridge, was duly elected county judge of Travis county, Texas, at the general election in November, 1886, and thereafter within the time prescribed by law he duly qualified as such county judge, and continued in the exercise of said office until his re-election thereto at the general election on the first Tuesday, being the sixth day of November, 1888; that while in the discharge of his official duties as county judge aforesaid, on or about the fifteenth day of November, 1888, being after the date of his re-election, and before he qualified for the present term of office, the defendant, J. M. Brackenridge, as county judge aforesaid, did wilfully demand fees of said office not allowed by law, as appears from the verdict of the jury and the judgment of the court aforesaid, and that on or about the twenty-first day of November, A. D., 1888, the said J. M. Brackenridge again duly and legally qualified as county judge of said Travis county, and is now the qualified and acting county judge of said Travis county:—Therefore, it appearing to the court that the defendant, J. M. Brackenridge, as county judge as aforesaid, has been convicted by a petit jury for a misdemeanor involving official misconduct, and that said conviction works an immediate removal of said defendant from said office of county judge, it is considered, ordered and adjudged by the the court that the defendant, J. M. Brackenridge, be and he is hereby removed from the office of county judge of Travis county, Texas, and the said office is declared to be vacant."

. It is insisted by counsel for the defendant that the judgment removing from office is unauthorized, because the acts of which defendant was convicted were committed *before* he had qualified as county judge, as his own successor in that office. It is provided by statute that "All convictions by a petit jury of any county officers for any felony, or for any misdemeanor involving official misconduct, shall work an immediate removal from office of the officer so convicted, and such judgment of conviction shall, in every instance, embody within it an order removing such officer." (Rev. Stat., art. 3388.) It is further expressly declared, however, that "No officer shall be prosecuted or removed from office for any act he may have committed prior to his *election* to office." (Rev. Stat., art. 3415.) There can be no question, in view of the last quoted provision of the statute and of the law as settled by the decisions of the courts, that if the acts of which the defendant was convicted had been committed prior to his election to the office, such acts would afford no legal ground for removing him from the office. (Gordon v. The State, 43 Texas, 330; Trigg v. The State, 49 Texas, 645; Flatan v. The State, 56 Texas, 93.) His election would be a condonation of any crime or misconduct committed prior thereto; at a time when he was not holding the office to which he was elected.

But in this case, at the time the defendant committed the act of which he has been convicted, he was the duly elected and qualified county judge of Travis county. He was such officer *de facto* and *de jure*. By virtue of his election and qualification in 1886 he was inducted into the office, and had the legal right to exercise, and was exercising its functions, until his successor should qualify. (Rev. Stat., art. 1133.) By the election of 1888 he became his own successor in the office, which election occurred prior to the commission of the acts of which he has been convicted. It can not be said, therefore, that said acts were condoned by that election. That he had not, at the time of the commission of said acts, been re-inducted into the office by virtue of his re-election does not, we think, affect the question of his removal, because he was in fact and by right the duly qualified county judge of Travis county at the time he committed the acts, and although said acts were committed by him as such officer under and by virtue of his election and qualification in 1886, they were not condoned by his re-election in 1888, occurring prior to the commission of said acts.

None of the decisions cited by counsel for the defendant in support of their position upon this question appear to us to be applicable. None of them present the case of an officer who succeeded himself and was already in possession of and exercising the functions of the office at the time he committed the acts for which he was removed. They are cases where the parties, though elected to an office, had never been inducted into it—had not qualified, or entered upon the discharge of its functions; and they do not conflict with the view which we entertain of the question as presented in this case, which is that the acts committed by defendant, having been committed subsequent to his re-election, were not condoned, and constituted ground for his removal from the office, although at the time of their commission he had not qualified under his re-election.

But it is contended by counsel for defendant that the acts for which the defendant has been convicted do not involve official misconduct, and do not, therefore, constitute ground for removal from office. By official misconduct is meant any unlawful behavior in relation to the duties of his office, wilful in its character, of any officer intrusted in any manner with the administration of justice, or the execution of the laws, etc. (Rev. Stat., art. 3393.) We do not hesitate to say that an officer who wilfully demands fees not allowed by law is guilty of official misconduct wilful in its character, and that a conviction of that offense is a conviction involving official misconduct within the meaning of the statute (Rev. Stat., arts. 3388, 3393), and not only warrants but demands his removal from the office.

It is made to appear, in a motion for a new trial supported by affidavits, that one Doss, who served on the jury in the trial of the cause, was not a qualified juror in Travis county; that he was not a householder in said county, nor a freeholder in the State, and that he was not a resident of said Travis county; that said juror, before being impaneled, had been interrogated touching his qualifications, and had answered under oath, to the court, that he resided in said Travis county and was a qualified voter in said county; that said Doss was a stranger to defendant, and that neither the defendant nor his counsel knew, or had reason to believe, that said Doss was not a qualified juror, and regarded his statement under oath that he was qualified as true. It is further made to appear that said Doss, before being impaneled upon said jury, made statements which indicated that he was prejudiced against the defendant, of

which statements the defendant and his counsel were ignorant when he was accepted as a juror. The district attorney filed a written denial of the truth of the above recited facts, but introduced no evidence in behalf of the State upon the issue thus formed; at least there is no evidence in the record before us controverting the defendant's testimony in support of said ground of his motion for a new trial. We must therefore hold that the facts set forth in said motion in relation to said ground, and which we have substantially recited, were established by the affidavits accompanying said motion.

Said facts being true, the defendant has been tried and convicted by a person not qualified to serve as a juror in the case, and whom the evidence tends strongly to show was prejudiced against him, and this without any negligence or fault on the part of either the defendant or his counsel. We are of the opinion that because of this ground the defendant was entitled to a new trial, and that the court erred in not granting his motion. ( Boren v. The State, 23 Texas Ct. App., 28; Armendares v. The State, 10 Texas Ct. App., 44; Hanks v. The State, 21 Texas Ct. App., 526; Henrie v. The State, 41 Texas, 573; Code Crim Proc., art. 631.) We are not prepared to say that by reason of the disqualified juror the defendant suffered no injury to his rights, even were we at liberty to consider that question.

There are other questions made in the record which we do not discuss or determine, because they are unimportant in view of the fact that they are of a character which may not arise on another trial.

Because the court erred in rerusing the defendant a new trial because of the disqualification of the juror Doss, and upon such ground alone, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Opinion delivered May 8, 1889.

Judge Hurt is not prepared to assent to or dissent from the conclusion of a majority of the court as to the *demand*, but concurs in the other views expressed in the opinion.