# Supreme Court of the Navajo Nation

**Rough Rock Community School
(Rough Rock School Board, Inc.), et al.,
Appellants,
v.
Navajo Nation,
Appellee.
Decided January 9, 1998**

## OPINION

Before YAZZIE, Chief Justice, AUSTIN and CADMAN, Associate Justices.

Lawrence A. Ruzow, Esq., Window Rock, Navajo Nation (Arizona), for the Appellants; and Thomas W. Christie, Esq., Navajo Nation Department of Justice, Window Rock, Navajo Nation (Arizona), for the Appellee.

Opinion delivered by CADMAN, Associate Justice.

This is an appeal from an order issued by the Window Rock District Court which dismissed the Appellants' claims under the 1990 Navajo Nation Election Code, 11 N.N.C. §§ 1-408, and its application to them. This Court issued an opinion on the first set of issues in this appeal on November 8, 1995 and ordered supplemental briefs. We now address the remaining issues.

## I

There were originally five Appellants. The Ramah Navajo Community School (Ramah Navajo School Board), and the Borrego Pass Community School (Dibe Yazhi Habitiin Olta, Inc.), are the only remaining Appellants. The Navajo Nation is the only Appellee.

On April 6, 1990, the Navajo Nation Council enacted the 1990 Navajo Nation Election Code ("Election Code"). 11 N.N.C. §§ 1-408 (Codified 1995). Section 11 of the Election Code assigned to the Education Committee of the Navajo Nation Council various tasks in developing an apportionment plan for school board elections. Section 11 provides:

A. A local Community School Board shall consist of not less than three nor more than seven members based upon apportionment.

B. The Education Committee of the Navajo Nation Council shall set the size

of each school board and shall apportion the number of school board seats among the Chapter or Chapters represented in each school board.

C. The apportionment plan shall be developed by the Education Committee in consultation with the Board, local school boards, Chapters, school board organizations such as agency school boards, and the Navajo Division of Education and shall be presented to the Navajo Board of Election Supervisors to use in the next local Chapter election.

D. The apportionment plan shall be based at a minimum on the number of students attending from one or more Chapters.

E. The Navajo Board of Election Supervisors shall arbitrate any disputes among the entities set forth in subsection (c) above arising from any apportionment plan. The decision of the Board shall be final.

11 N.N.C. § 11.A.-E.

On August 9, 1991, the Education Committee established its Subcommittee on School Board Policies ("Subcommittee"). Certain tasks were assigned to this Subcommittee and included specifically the following:

a. Conduct hearings pursuant to established laws of the Nation and request the attendance of local school boards, school board associations, and the other appropriate entities to obtain input from these entities in determining the current policies, laws, rules and regulations governing school boards including but not limited to school board apportionment and school board codes of conduct, of the Navajo Nation; and

b. Submit a written report with findings and recommendations providing how each policy, law, rule and regulation applies to school boards of the Navajo Nation to the full Education Committee; and

c. Pursuant to 2 N.N.C. Section 186, the same provisions which apply to Committee meetings shall apply to said Subcommittee meetings.

Appellants' Exhibit "11," Memorial of the Education Committee; Appellee's Exhibit "JJJJJ."

The Subcommittee conducted various meetings in the Navajo Nation to develop the apportionment plan. Hearings were held in Window Rock, on September 5, 1991; at Shiprock, on October 3-4, 1991; in Window Rock, on October 16, 1991, with representatives of the Navajo Area School Board Association ("NASBA"), the Navajo Election Administration, and certain Navajo Nation Departments; in Tuba City, on October 18, 1991; and in Leupp, on November 4, 1991.

No hearings took place at any schools for which the Subcommittee was developing the apportionment plan. No remarks in the Navajo language by witnesses were interpreted into English for the minutes. Witnesses were placed under oath and limited to fifteen-minute testimony. Some Appellants complained that they either did not receive notice of the hearings or received notice shortly before the hearings. This resulted in inadequate preparation time. The Appellants claim that the total time spent by the Subcommittee on hearings was less than 24 hours.

The Election Code also directed the Education Committee to "promulgate rules and regulations necessary and proper to carry out the purposes of the

Election Code...." 11 N.N.C. § 12.A. On October 3, 1991, the Subcommittee adopted "Rules of Procedures for Conducting Oversight Hearings." The Subcommittee recommended the approval of the apportionment plan to the Education Committee on October 18, 1991.

On November 6, 1991, the Education Committee adopted the apportionment plan by Resolution No. ECN-72-91, and set up the number of school board members to be elected to each board and determined which chapters would be involved in the election of each board. After approval of the plan, it was sent to the Navajo Board of Election Supervisors ("NBOES") for use in the next election. 11 N.N.C. § 11.C. On November 7, 1991, the NBOES accepted the apportionment plan as approved by the Education Committee.

Following the Education Committee's adoption of the apportionment plan, the Appellants raised objections to it and sought arbitration through the NBOES. On November 14, 1991, the NBOES adopted rules and regulations for arbitration and set an arbitration session for November 18, 1991. The Appellants attended the November 18 session, however, the Education Committee did not. The NBOES met again on November 25, 1991, and this time the Education Committee was present but the Appellants did not attend. Stanley Milford, NBOES member, attempted to reach a compromise with the parties on the dispute, but was unsuccessful. The NBOES upheld the apportionment plan on December 5, 1991.

On April 18, 1992, the Appellants filed a complaint for declaratory and injunctive relief in the Window Rock District Court. In addition to the claims decided by this Court in its earlier opinion, the Appellants argued that the Education Committee violated Section 11.C. of the Election Code by failing to consult with them and their respective chapters when developing the apportionment plan. They also claimed that the NBOES violated Section 11.E. of the Election Code because it failed to arbitrate the dispute between them and the Education Committee.

On July 31, 1992, the district court ruled on the first set of issues in this appeal. After a trial was held on the remaining issues, the Navajo Nation moved for an involuntary dismissal. The district court granted the motion and dismissed all of the Appellants' remaining claims. The Appellants filed an appeal with this Court on March 31, 1994.

## II

The issues necessary to finally decide this appeal are:

1. Did the Education Committee comply with the Election Code provisions concerning consultation with local school boards, school board associations, chapters, and other appropriate entities in developing the apportionment plan?

2. Did the Navajo Board of Election Supervisors properly arbitrate the dispute between the Appellants and the Education Committee concerning the apportionment plan as required under the Election Code?

## III

### Standard of Review

The parties first ask this Court to clarify our standard of review of a district court's findings on conclusions of law and "mixed" issues of fact and law. The Appellants have appealed an involuntary dismissal, involving an order terminating a case without a trial of any of the issues. *Brackenbridge v. State*, 27 Tex. App. 513, 11 S.W. 630 (overruled on other grounds); *Leeper v. State*, 29 Tex. App. 63, 14 S.W. 398, aff'd 139 U.S. 462. The pertinent part of the Navajo Rules of Civil Procedure provides:

> After the plaintiff, in a non-jury trial has completed his case, the defendant may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court may render judgment against the plaintiff or may decline to render judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).

Nav. R. Civ. P. 39(b). Thus, an involuntary dismissal is an adjudication on the merits under Rule 39(b); and this Court's review is the same as that applied to an appeal of any district court decision based upon the merits of the case.

Generally, this Court reviews questions of law decided by the district courts *de novo*. This is consistent with 7 N.N.C. § 803, that appeals "are limited to the issues of law raised in the record on appeal." We give no deference to the district court's determination on questions of law. Findings of fact must be accepted by this Court unless the district court's factual findings are "clearly erroneous." *Higdon v. Nelson*, 7 Nav. R. 158, 159 (1995). Evidentiary rulings are reviewed under the abuse of discretion standard, and "[a]bsent a clear abuse of discretion, this Court will not disagree with a district judge's decision." *Chavez v. Tome*, 5 Nav. R. 183, 186 (1987) (citing *In the Matter of Contempt of: Arnold Sells*, 5 Nav. R. 37 (1985)).

Navajo law, including Navajo common law, defines abuse of discretion for purposes of evidentiary rulings. The district court has discretion to act within the boundaries of the Navajo Rules of Evidence on evidentiary questions. This Court has spoken to the concept of judicial discretion:

> If the court has the power to punish for contempt, it follows that the court must have the authority to determine what kind of conduct will constitute contempt.... Absent a clear abuse of discretion or conduct on the part of the judge which is so unreasonable as to be classified as capricious and arbitrary, this Court will not disagree with a trial Judge's determination. (citations omitted).

*In the Matter of Contempt of Tuchawena*, 2 Nav. R. 85, 89 (1985).

This Court later refined the term "discretion" by adding:

> The holding in *Tuchawena* does not, however, clothe a Judge with authority

> to use contempt powers of the court to punish actions which displease him personally or are outside the jurisdiction of the court. The use of the word 'discretion' as applied to judges or courts means discretion to act within certain boundaries. For judicial discretion those boundaries are the rules and principles of law as applied to the facts of a particular case. (citation omitted).

*In the Matter of Contempt of Sells*, 5 Nav. R. 37, 38 (1985). Clearly, if a district court makes rulings outside the boundaries of the Navajo Rules of Evidence, those rulings are not entitled to deference from this Court. This Court will review evidentiary rulings of the district court under the abuse of discretion standard. If this Court holds an evidentiary ruling incorrect, we must still accept the factual finding it supports, unless the incorrect evidentiary ruling affects the substantial rights of the parties. Then it would make the finding clearly erroneous.

## IV

### Consultation

On the issue of whether the Education Committee complied with the Election Code provision requiring consultation with the local school boards, chapters, school board associations, and the Navajo Division of Education in developing the apportionment plan, we hold that it did not. The Appellants raise several arguments on this issue: (1) the Education Committee failed to carry out its duties as prescribed by the Navajo Nation Council; (2) the Education Committee never consulted anyone on the apportionment plan it approved; and (3) no hearing was ever held by the Education Committee on the plan.

The Navajo Nation Council, on April 6, 1991, mandated the Education Committee to develop an apportionment plan "in consultation" with the people and entities who would be affected by the plan. See 11 N.N.C. § 11.C. In our first opinion, we held accordingly: "[I]t is clear the Navajo Nation Council has delegated the Education Committee as the appropriate body to finally approve all school board apportionment plans." *Rough Rock Community School, et al. v. Navajo Nation*, 7 Nav. R. 168, 175 (1995). Thus, the Education Committee renders a final decision on the apportionment plan. Here, it delegated to the Subcommittee the authority to develop the plan and provide for consultation. We find this delegation of authority to the Subcommittee proper. See 2 N.N.C. § 186.

The statutory requirement of "consultation" should have been strictly adhered to since the apportionment plan was being developed for the local schools and the communities they serve. Navajo common law speaks to consultation as giving participants ample freedom to speak, be heard, and opportunity to present written comments. The Navajo doctrine of *k'e* underlies all transactions between and among Navajos, and it likewise frames our view of consultation under the Election Code. Consultation is far more than giving unilateral testimony under oath for a limited number of minutes. It must encompass complete discussion of Navajo values, concepts, and diversity of opinion in an atmosphere of *k'e*

(including equality and respect), ultimately leading to a consensual solution. This is the heart of Navajo due process embedded in Navajo participatory democracy that we discussed in *Downey v. Bigman*, 7 Nav. R. 176 (1995).

While the Subcommittee held public hearings in several locations within the Navajo Nation, the record indicates that consultation, as required by the Election Code, was not satisfied. These meetings were held to decide issues on the education of our Navajo children. The concept of consultation requires both a physical presence and an open mind. Because of the lack of discussion in an arena of equality and mutual respect, consultation did not occur.

Imposing strict time limits on witnesses to give testimony is not conducive to consultation, although gentle persuasion is often necessary to move the discussion along. In this case, strict time limits were set on the speakers and they were not comfortable with speaking under oath. The latter implied that unless they took an oath they would not tell the truth.

Finally, instead of going to each of the schools affected by the apportionment plan to learn the needs of the schools and work out a plan which would best meet the unique needs of the schools and the communities they serve, the Subcommittee adopted a universal plan that did not meet such unique needs. The hearings also appear to depart from its purpose of consultation as they conflicted with other communal events such as community fairs. For these reasons, we find that the statutory requirement of consultation was not satisfied.

# V

## Arbitration

The Election Code provides for arbitration by the NBOES of any disputes among the entities arising from any apportionment plan, and that the decision of the Board is final. 11 N.N.C. § 11.E. Arbitration is defined as:

> The reference of a dispute to an impartial (third) person chosen by the parties to the dispute who agree in advance to abide by the arbitrator's award issued after a hearing at which both parties have an opportunity to be heard.

*Black's Law Dictionary* 96 (5th ed.)

The NBOES adopted its arbitration rules and procedures on November 14, 1991. The Navajo Nation Council mandated that the "rules and regulations to be considered by the Board shall be consistent with the Election Code and other Navajo Nation laws." 11 N.N.C. § 12.B. There is nothing to suggest that the arbitration rules and procedures violated the Election Code. Thus, Navajo law requires that the NBOES follow its own rules, regulations, and procedures. *Begay v. Wero*, 4 Nav. R. 104, 106 (1983); *In re Removal of Katenay*, 6 Nav. R. 81 (1989).

The plain language of the Election Code states that the NBOES "shall arbitrate any disputes among the entities ... arising from any apportionment plan." 11 N.N.C. § 11.E. The rules and regulations approved by the NBOES should have

guided the arbitration. However, the rules were not followed and no arbitration resulted because the NBOES confused arbitration with mediation. In fact, the Education Committee, a necessary party, did not even appear for the November 18 arbitration and waited until November 21, 1991 to meet with the NBOES. The attempt by Stanley Milford to reach a compromise was not arbitration. In addition, ex parte hearings were permitted and no record of the proceedings were maintained. We conclude that the NBOES violated the arbitration clause of the Election Code.

## VI

### Decision

The apportionment plan was not developed in accordance with the Election Code and is therefore invalid. The involuntary dismissal of the Appellants' claims by the Window Rock District Court is reversed.